IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| GANAS, LLC, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | CIVIL ACTION NO. 2:10-CV-320-DF |
| § | |
| SABRE HOLDINGS CORP., et al., § | |
| § | |
| Defendants. § | |

**O R D E R**

Before the Court is Defendant TD Ameritrade, Inc.'s ("TDAI's") Corrected Motion to Sever and Transfer. Dkt. Nos. 332 & 333. Also before the Court are Plaintiff's response and TDAI's reply. Dkt. Nos. 387 & 398.

Before the Court is Defendant Scottrade Inc.'s ("Scottrade's") Motion to Sever and Transfer. Dkt. No. 336. Also before the Court are Plaintiff's response and Scottrade's reply. Dkt. Nos. 387 & 396.

Before the Court is Defendant National Financial's Motion to Sever and Transfer. Dkt. No. 344. Also before the Court are Plaintiff's response and National Financial's reply. Dkt. Nos. 387 & 393.

Before the Court is Defendant Hewlett-Packard Company's ("HP's") Motion to Dismiss for Improper Joinder or Alternatively to Sever. Dkt. No. 354. Also before the Court are Plaintiff's response and HP's reply. Dkt. Nos. 387 & 403.

1

EXHIBIT A

The above-named moving defendants may sometimes be referred to herein collectively as "Defendants."

Having considered the briefing and all relevant papers and pleadings, the Court finds that Defendants' motions should be DENIED.

## I. LEGAL PRINCIPLES

Title 28, Section 1404(a) of the United States Code provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." A district court has broad discretion in deciding whether to order a transfer. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) ("*Volkswagen II*"). The Supreme Court of the United States has noted that Section 1404(a) is intended to place discretion in the district court to adjudicate motions to transfer according to an "individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988); *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964).

The Court of Appeals for the Fifth Circuit has set forth that the first "threshold" determination a district court must make under Section 1404(a) is whether the claims could have been brought in the proposed transferee district. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*"). After such a determination, the district court must then consider the convenience of the parties and witnesses in both forums. *Id.*; *see also Humble Oil & Ref. Co. v. Bell Marine Serv., Inc.*, 321 F.2d 53, 56 (5th Cir. 1963); *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2009); *Bolt v. Toyota Indus. Corp.*, 351 F. Supp. 2d 597, 599 (E.D. Tex. 2004).

A convenience determination consists of balancing the conveniences and inconveniences resulting from the plaintiff's choice of venue, in comparison with those of the proposed venue. This balancing includes examining several private and public interest factors, none of which has dispositive weight. *Volkswagen I*, 371 F.3d at 203. The private interest factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id.* (citing *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 241 n.6 (1981)); *see also In re TS Tech*, 551 F.3d at 1319. The public interest factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws o[r] the application of foreign law." *Volkswagen I*, 371 F.3d at 203 (citing *Piper*, 454 U.S. at 241 n.6); *see also In re TS Tech*, 551 F.3d at 1319.

The plaintiff's choice of venue is not a separate factor. *Volkswagen II*, 545 F.3d at 314-15. Instead, the plaintiff's choice of venue contributes to the defendant's burden to prove that the transferee venue is "clearly more convenient" than the plaintiff's chosen venue. *Id.* at 315; *In re TS Tech*, 551 F.3d at 1319. Also, although the private and public interest factors apply to most transfer cases, "they are not necessarily exhaustive or exclusive," and no single factor is dispositive. *Volkswagen II*, 545 F.3d at 314-15.

## II. BACKGROUND AND THE PARTIES' POSITIONS

Plaintiff brings suit alleging infringement of, for example, United States Patent No. 7,136,913, entitled "Object oriented communication among platform independent systems across

3

a firewall over the internet using HTTP-SOAP." *See* First Amended Complaint, Dkt. No. 260 at

¶ 40. The Abstract of the '913 Patent states:

> A system for communication over the internet and through a firewall utilizing a single communications protocol. A simple object access communications protocol (SOAP) is utilized. This protocol is an XML/HTTP based protocol for sending messages from one object to another across the internet in a platform independent manner. This type of protocol can be utilized to control network elements provided at various locations.

Dkt. No. 1 at Ex. A. Plaintiff also alleges infringement of United States Patents No. 7,325,053, 7,734,756, and 7,007,094. Dkt. No. 260 at ¶¶ 58, 76 & 94; Dkt. No. 1 at Exs. B, C, & D.

TD Ameritrade, Inc. ("TDAI") argues that Plaintiffs case against it should be severed because "[i]f this litigation proceeds as a single case, defendants will be prejudiced by having . . . sensitive [computer network] information exposed to co-defendants." Dkt. No. 332 at 2; *see also id.* at 6. TDAI also moves to transfer Plaintiff's case against it to the District of Nebraska because TDAI's headquarters is in Omaha, Nebraska. *Id.* at 2. TDAI submits that its party witnesses are in Omaha or in Jersey City, New Jersey, that the named inventors are in Ontario, Canada, and that patent prosecution counsel is in Arlington, Virginia. *Id.* at 9-10. TDAI argues that Plaintiff's place of business in Allen, Texas, was established in an effort to manipulate venue and should therefore be disregarded. *Id.* at 10.

Scottrade, Inc. ("Scottrade") joins TDAI's motion and moves to transfer Plaintiff's claims against it to the Eastern District of Missouri because "[t]he critical accused systems, hardware, and software are all located in St. Louis, Missouri." Dkt. No. 336 at 1-2. Scottrade argues that the Eastern District of Missouri is closer to Virginia and Ontario than is the Eastern District of Texas. *Id.* at 6-7. Scottrade further submits that the average time to disposition (8.2 months) and

4

average time to trial (21.3 months) are both shorter in the Eastern District of Missouri than in the Eastern District of Texas (10.7 months and 25.8 months, respectively). *Id.* at 11.

National Financial joins in the motions of TDAI and Scottrade and moves to transfer Plaintiff's claims against National Financial to the District of Massachusetts. Dkt. No. 344 at 1. National Financial submits that it is headquartered in Boston, Massachusetts, and that the accused computer systems "are housed primarily on the East Coast." *Id.* at 5. National Financial submits that the District of Massachusetts is closer to Virginia and Ontario than is the Eastern District of Texas. *Id.* at 6-7.

Hewlett-Packard Company ("HP") moves to sever for the same reasons set forth by TDAI, Scottrade, and National Financial. Dkt. No. 354. HP also moves to dismiss for improper joiner. *Id.* HP has not moved to transfer venue.

Plaintiff responds that joinder is proper. Dkt. No. 387 at 1 (citing *MyMail, Ltd. v. America Online, Inc.*, 223 F.R.D. 455 (E.D. Tex. 2004) (Davis, J.)). Plaintiff argues that spreading the above-captioned case out across four judicial districts would be inefficient and would create additional burden for any third parties that would be subpoenaed for documents and testimony in multiple actions instead of just one. *Id.* at 2. Plaintiff submits that Defendants' concerns about confidentiality can be addressed by the parties "simply agree[ing] to a protective order in which the defendants don't share information with each other about their computer systems." *Id.* at 6.

As to venue, Plaintiff argues that none of the proposed venues is proper because Defendants have not shown that Plaintiff could have filed its suit against all of the Defendants in any of those venues. *Id.* at 8. Plaintiff also argues that its headquarters in Allen was not

established for purposes of litigation because Plaintiff's president is a long-time Texas resident who resides "10 minutes" from the office in Allen. *Id.* at 8. Plaintiff also notes that the remaining four defendants in the above-captioned case have not moved to transfer and that TDAI, Scottrade, and National Financial all have offices (and relevant personnel and documents) in Texas "within 150 miles of this District." *Id.* at 9-10. Plaintiff further submits that none of the Defendants have identified any third party witnesses that would be subject to the subpoena power of the proposed transferee venues. *Id.* at 10-11. Finally, Plaintiff urges that the interests of judicial economy and avoidance of potentially inconsistent results weigh heaving against severing and transferring any of the Defendants. *Id.* at 12.

National Financial replies that the restricted joinder provision of the recently-passed Leahy-Smith America Invents Act is evidence that joinder is improper in the above-captioned case. Dkt. No. 393 at 1. National Financial argues that although the "SOAP Internet communications protocol" is at issue, "[Plaintiff] does not claim to own the SOAP standard itself, but rather a particular implementation of SOAP for controlling devices remotely." *Id.* at 2. National Financial argues that joinder is improper because "[t]o the extent the defendants use SOAP, they do so differently." *Id.* National Financial reiterates it would be prejudiced by defending itself alongside numerous competitors both during discovery, where its confidential information would be at risk, and at trial, where it would "need to explain its unique technology alongside a half-dozen of its competitors, all rushing to distinguish themselves in a jury's eyes." *Id.* at 3. National Financial also cites this Court's decision in *Balthasar Online Inc. v. Network Solutions, LLC*, 654 F. Supp. 2d 546 (E.D. Tex. 2009), which found that "[i]f suit might have been brought against one or more defendants in the transferee court, the claims against those

defendants may be severed and transferred while the other claims are retained in the original court." *Id.* at 4. Finally, National Financial notes that Plaintiff fails to name *any* witness in the Eastern District of Texas or within 100 miles of this Court, instead only referring to "potential witnesses" in the abstract. *Id.* at 5.

Scottrade replies that *MyMail*, cited by Plaintiff, is distinguishable here because Plaintiff has already served infringement contentions that demonstrate the lack of overlap between Defendants' systems: "The only similarity is that [Plaintiff] accuses them all of patent infringement." Dkt. No. 396 at 3-5. As to venue, Scottrade submits that its branch locations in Texas "typically employ a manager and one or two brokers" and that "[t]here are no Scottrade programmers or IT employees in Texas." *Id.* at 6.

TDAI replies with arguments similar to those of National Financial and Scottrade. *See* Dkt. No. 398. TDAI adds that Plaintiff's proposal regarding confidentiality "does nothing to prevent the prejudice from disclosing the sensitive information to joint codefendants during trial." *Id.* at 3. As to venue, TDAI submits that the location of Plaintiff's chief executive is irrelevant because Plaintiff "has no business operations, and the corporate headquarters was established only two weeks before [Plaintiff] acquired the patents and four months before it filed this suit." *Id.* at 4. Finally, TDAI notes that "to the extent it is desirable that the litigation between [Plaintiff] and all defendants proceed in a single forum, multidistrict litigation procedures are available that promote efficiency." *Id.* at 5.

HP replies by incorporating the replies of National Financial, Scottrade, and TDAI. Dkt. No. 403 at 1. HP also emphasizes that "not all defendants are accused of infringing all three asserted patents," that "[t]he various defendants do not share any resources or property," and that

7

Case 2:10-cv-00053-DF Document 405 Filed 9/1/11 Page 8 of 17 PageID #: 7459

"the different defendants have independently developed their respective products." *Id.* at 2.

### III. DISCUSSION

TDAI, Scottrade, and National Financial submit that Plaintiff could have filed its claims against each of them in the proposed transferee venues, respectively. Plaintiff does not dispute this and instead only argues that Plaintiff could not have filed the entire above-captioned case in any of the proposed transferee venues. Dkt. No. 387 at 8. Because TDAI, Scottrade, and National Financial are requesting severance and transfer to their home venues, Plaintiff's argument is inapposite.

### A. Private Interest Factors

(1) Sources of Proof

Despite technological advances that undoubtedly reduce the relative inconvenience of transporting documents across the country, this factor must still be considered. *Volkswagen II*, 545 F.3d at 316 ("That access to some sources of proof presents a lesser inconvenience now than it might have absent recent developments does not render this factor superfluous.").

Plaintiff has not identified any documents at its headquarters in Allen that would be relevant. *See* Dkt. No. 387 at 9. Further, Plaintiff has not identified any of Defendants' documents that are located in this district. At most, Plaintiff submits that some relevant documents and systems may be located in Texas. *See id.* at 9-10. Defendants, by contrast, have shown that their headquarters, as well as relevant documents and systems, are predominantly located in their proposed transferee venues. *See* 7/18/2011 Rojas Decl., Dkt. No. 332 at Ex. A (TDAI); 7/28/2011 Nickelson Decl., Dkt. No. 336 at Ex. B (Scottrade); 7/28/2011 Lutz Decl., Dkt. No. 334-1 (National Financial); 7/29/2011 Stahl Decl., Dkt. No. 344 (National Financial).

This factor therefore weighs in favor of transfer. *In re Genentech, Inc.*, 566 F.3d 1338 (Fed. Cir. 2009) ("In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location."); *cf. In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1199-1200 (Fed. Cir. 2009) ("Because most evidence resides in Washington [the proposed transferee venue] or Japan with none in Texas, the district court erred in not weighing this factor heavily in favor of transfer.");

(2)  Availability of Compulsory Process

No party has identified any non-party witnesses that would be subject to the subpoena power of this Court or of any of the proposed transferee courts. At most, Defendants suggest that if any of their former employees are relevant witnesses, they would likely be subject to the subpoena power of the proposed transferee courts. *See* Fed. R. Civ. P. 45.

Because no specific showing has been made by any party, this factor is neutral.

(3)  Cost of Attendance for the Parties and Witnesses

This factor is analyzed giving broad "consideration [to] the parties and witnesses in all claims and controversies properly joined in a proceeding." *Volkswagen I*, 371 F.3d at 204. Further, courts are not to consider the "significance of the identified witnesses' testimony," at least not beyond "assess[ing] the relevance and materiality of the information the witness may provide." *In re Genentech*, 566 F.3d at 1343. The relative materiality of witnesses' testimony is irrelevant to this inquiry. *See id.* ("Requiring a defendant to show that a potential witness has more than relevant and material information at this point in the litigation or risk facing denial of transfer on that basis is unnecessary."). Thus, for the transfer analysis, all potential material and

relevant witnesses must be considered as offering testimony of equal importance.

The Fifth Circuit has adopted a "100-mile rule" to assist in analyzing this factor. *See Volkswagen I*, 371 F.3d at 204-205. "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Volkswagen I*, 371 F.3d at 205. When applying the 100-mile rule, the threshold question is whether the plaintiff's chosen venue and the proposed venue are more than 100 miles apart. *See Volkswagen II*, 545 F.3d at 317; *In re TS Tech*, 551 F.3d at 1320. If so, then a court determines the respective distances between the residences (or workplaces) of all the identified relevant witnesses and the two venues under consideration. *See Volkswagen II*, 545 F.3d at 317; *In re TS Tech*, 551 F.3d at 1320.

The 100-mile rule generally favors transfer (with differing degrees) if the proposed venue is a shorter average distance away from witnesses than the plaintiff's chosen venue. *See Volkswagen II*, 545 F.3d at 317; *In re TS Tech*, 551 F.3d at 1320. Finally, for this factor to favor transfer, the proposed venue need not be more convenient for *all* of the witnesses. *In re Genentech*, 566 F.3d at 1345. Instead, this factor can favor transfer when a "substantial number of material witnesses reside in the transferee venue" and no witnesses reside in plaintiff's chosen venue. *Id.*

Because the proposed transferee venues are all more than 100 miles away from the Eastern District of Texas, the Court applies the 100-mile rule.

As to the parties, TDAI, Scottrade, and National Financial each propose transfer to the venue in which their respective headquarters are located.

10

As to non-parties, the inventors in Ontario, Canada, as well as patent prosecution counsel in Arlington, Virginia, are closer to all three of the proposed transferee venues (Massachusetts, Nebraska, and Eastern Missouri) than to the Eastern District of Texas.

Finally, assuming that the Eastern District of Texas could be deemed a "centralized location" as to the moving Defendants, "it is improper to consider the centralized location of the Eastern District of Texas when no identified witness resides in the district." *In re Nintendo*, 589 F.3d at 1199 (*In re Genentech*, 566 F.3d 1338, 1345 (Fed. Cir. 2009)).

On balance, this factor favors transfer.

(4) Practical Problems

This Court addressed judicial economy under analogous circumstances in *IP Co., LLC v. Oncor Elec. Delivery Co.*, Civil Action No. 2:09-CV-37, Dkt. No. 106 (E.D. Tex. Aug. 3, 2009):

> Practical problems include those that are rationally based on judicial economy. *In re Volkswagen of Am., Inc.*, 566 F.3d 1349, 1351 (Fed. Cir. 2009) ("*Volkswagen III*"). Particularly, the existence or creation of duplicative suits in different courts involving the same or similar issues may create practical difficulties that weigh heavily in favor of or against transfer. *Id.*
>
> The recent *In re Volkswagen* decision of the Court of Appeals for the Federal Circuit found that "the existence of multiple suits involving the same issues is a paramount consideration when determining whether a transfer is in the interest of justice" and that "a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to wastefulness of time, energy, and money that § 1404(a) was designed to prevent." *Volkswagen III*, 566 F.3d at 1351 (citation omitted); *see also SIPCO LLC v. Amazon.com, Inc., et al.*, Civil Action No. 2:08-cv-359, Dkt. No. 232 (E.D. Tex. June 4, 2009). Here, only [one defendant] moves to transfer. None of the remaining . . . defendants . . . have joined in [the one defendant's] motion to sever and transfer. [Defendant's] request to sever and transfer Plaintiff's case against [Defendant] would thus generate an additional suit in another district (involving the same patent and thus likely involving many of the same issues), which *In re Volkswagen* indicates would be directly contrary to the purposes of § 1404(a). This factor therefore weighs heavily against transfer.

11

In *Balthasar*, cited by Defendants, the moving defendants all requested transfer to a single proposed transferee venue, the Northern District of California. *See* California Defs.' Joint Mot. to Transfer, *Balthasar Online Inc. v. Network Solutions, LLC*, C.A. No. 2:08-CV-430, Dkt. No. 168 at 1. All remaining defendants either joined or did not oppose the motion. *Id.* The Court ordered the case severed because "[a]s to the Texas Defendants, added by Balthasar after the Federal Circuit's *TS Tech* decision, . . . transfer would be extremely inconvenient and unfair." 654 F. Supp. 2d at 552-53. The Court expressly found that "these [Texas] defendants are not so involved in the controversy as to require the same issues to be litigated in two places." *Id.* at 553. These four Texas Defendants, two of whom appeared *pro se*, one of whom had failed to appear, and another of whom "verbally opposed the transfer for hardship reasons at the hearing," were marginal parties that "were apparently added to the lawsuit for the purpose of maintaining venue in this district." 654 F. Supp. 2d at 553. Only these small Texas Defendants—which Balthasar had added, post-filing, for venue purposes—were left behind; the Court transferred the vast bulk of the case to the Northern District of California. *Id.* at 553 & nn. 6 & 7.

In the above-captioned case, by contrast, TDAI, Scottrade, and National Financial propose individual severance and transfer to three different districts, leaving substantial defendants behind to litigate in the Eastern District of Texas, including HP. *Balthasar* is thus distinguishable.

Because TDAI, Scottrade, and National Financial propose creating three additional suits in three separate districts, the interests of judicial economy weigh heavily against transfer. *Volkswagen III*, 566 F.3d at 1351.

12

B. **Public Interest Factors**

(1) Court Congestion

The speed with which a case can come to trial and be resolved is a factor in the transfer analysis. *In re Genentech*, 566 F.3d at 1347. However, the *Genentech* court additionally noted that this factor is the "most speculative," and in situations where "several relevant factors weigh in favor of transfer and others are neutral, the speed of the transferee district court should not alone outweigh all of those other factors." *Id.* Nonetheless, a proposed transferee court's "less congested docket" and "ab[ility] to resolve this dispute more quickly" is a factor to be considered. *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1336 (Fed. Cir. 2009).

Defendants submit that the Eastern District of Missouri and the District of Nebraska have an average time to trial that is 4.5 months and 9.7 months faster, respectively, than the Eastern District of Texas. Dkt. No. 387 at 12-13. Given that these differences are relatively small and that this factor is the "most speculative," this factor weighs only slightly in favor of transfer. *In re Genentech*, 566 F.3d at 1347.

(2) Local Interest

The Fifth Circuit has explained that "[j]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *Volkswagen I*, 371 F.3d at 206. Thus, this factor analyzes the "factual connection" that a case has with both the transferee and transferor venues. *See Volkswagen I*, 371 F.3d at 206. Generally, local interests that "could apply virtually to any judicial district or division in the United States" are disregarded in favor of particularized local interests. *Volkswagen II*, 545 F.3d at 318 (in a products liability suit, disregarding local interest of citizens who used the widely-sold product within the plaintiff's

13

chosen venue); *In re TS Tech*, 551 F.3d at 1321 (in a patent suit, disregarding local interest of citizens in the plaintiff's chosen venue who used the allegedly infringing products because the products were "sold throughout the United States").

Defendants do business nationwide, so this case is not tied to the Eastern District of Texas in any manner that would not apply to most other districts. Nonetheless, "the cause of action calls into question the work and reputation" of Defendants' employees. *In re Hoffman-La Roche*, 587 F.3d at 1336. Each proposed transferee venue therefore has a local interest in Plaintiffs claims against its respective Defendant.

Finally, Plaintiff points to its principal place of business in the Eastern District of Texas. Plaintiff has not challenged Defendant's assertion that Plaintiff has no business operations other than litigation. Given that Plaintiff's "corporate headquarters was established only two weeks before [Plaintiff] acquired the patents and four months before it filed this suit" (Dkt. No. 398 at 4), Plaintiff's headquarters appears to have been established in the Eastern District of Texas "in anticipation of litigation." *In re Microsoft Corp.*, 630 F.3d 1361, 1365 (Fed. Cir. 2011) (rejecting reliance on place of incorporation where done "in anticipation of litigation"); *see also In re Zimmer*, 609 F.3d at 1381 (finding that patentee's "presence in Texas appears to be recent, ephemeral, and an artifact of litigation"). The Court therefore affords only minimal weight, if any, to Plaintiff's place of business.

In sum, this factor weighs in favor of transfer.

(3) Familiarity With the Governing Law

No party has shown that this factor is applicable. The Court accordingly finds this factor neutral.

(4) Avoidance of Unnecessary Conflict of Laws Problems

No party has shown that this factor is applicable. The Court accordingly finds this factor neutral.

## C. Balancing the Factors and Addressing Joinder

In sum, the location of sources of proof, convenience of witnesses, and local interest all favor transfer, court congestion slightly favors transfer, judicial economy weighs heavily against transfer, and the remaining factors are neutral.

On one hand, the Court of Appeals for the Federal Circuit has repeatedly "considered and rejected arguments that the preservation of judicial economy should preclude transfer to a far more convenient venue." *In re Morgan Stanley*, Misc. Nos. 962, 964, 967, 417 Fed. App'x 947, 949 (Fed. Cir. Apr. 6, 2011).

On the other hand, this is not a simple request for "transfer to a far more convenient venue." *Id.* Unlike in *Morgan Stanley* and the cases cited therein, here Defendants propose splitting the above-captioned case into five separate actions and transferring three of them to three different districts. *Volkswagen III* held that fragmenting a case in this manner would be directly contrary to the purposes of Section 1404(a). *Volkswagen III*, 566 F.3d at 1351; *accord Eolas Techs., Inc. v. Adobe Sys., Inc.*, No. 6:09-CV-446, 2010 WL 3835762, at *2 (E.D. Tex. Sept. 28, 2010) (Davis, J.); *Innovative Global Sys. LLC v. Turnpike Global Techs.*, No. 6:09-CV-157 (E.D. Tex. Oct. 20, 2009) (Love, J.); *Adrain v. Genetec Inc.*, No. 2:08-CV-423, 2009 WL 3063414, at *2-*3 (E.D. Tex. Sept. 22, 2009) (Everingham, J.); *Centre One v. Vonage Holdings Corp.*, No. 6:08-CV-467, 2009 WL 2461003, at *7 (E.D. Tex. Aug. 10, 2009) (Davis, J.).

Although Defendants argue that the joinder provision of the Leahy-Smith America

15

Invents Act is probative of the correct interpretation of existing law, the joinder provision is not retroactive. *See* Pub. L. No. 112-29, § 19, 125 Stat. 284, 332-33 (2011). Presumably, if Congress had intended to apply the new joinder provision retroactively, Congress could have done so, as it did with the new false marking provision. *Id.* at § 16, 125 Stat. at 329. The Court is therefore bound to apply *Volkswagen III*.

On balance, the convenience and local interest factors do not outweigh the judicial economy of avoiding creation of five separate actions spread across four judicial districts. The motions of TDAI, Scottrade, and National Financial to sever and transfer should therefore be DENIED.

Likewise, HP's motion to dismiss for improper joinder or to sever should be DENIED based on the "nucleus of operative facts or law in the claims against all the defendants." *MyMail*, 223 F.R.D. at 457.

Finally, although Defendants argue that separate trials will be necessary as to each defendant, the propriety of ordering separate trials pursuant to Federal Rule of Civil Procedure 42(b) can be addressed at a later stage in these proceedings, if appropriate. *See, e.g., DataTreasury Corp. v. Wells Fargo & Co., et al.*, Civil Action No. 2:06-CV-72, Dkt. No. 1870 (E.D. Tex. Jan. 19, 2010); *LML Patent Corp. v. JPMorgan Chase & Co.*, Civil Action No. 2:08-CV-448, Dkt. No. 817 (E.D. Tex. Jan. 19, 2011).

## IV. CONCLUSION

Defendant TD Ameritrade, Inc.'s Corrected Motion to Sever and Transfer (Dkt. Nos. 332 & 333) is hereby **DENIED**.

Defendant Scottrade Inc.'s Motion to Sever and Transfer (Dkt. No. 336) is hereby

16

**DENIED**.

Defendant National Financial's Motion to Sever and Transfer (Dkt. No. 344) is hereby **DENIED**.

Defendant Hewlett-Packard Company's Motion to Dismiss for Improper Joinder or Alternatively to Sever (Dkt. No. 354) is hereby **DENIED**.

**IT IS SO ORDERED.**

**SIGNED this 19th day of October, 2011.**

_____
DAVID FOLSOM
UNITED STATES DISTRICT JUDGE