**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| GEOTAG, INC., | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | Civil Action No. 2:11-cv-00405-MHS-CMC |
| v. | § | |
| | § | JURY TRIAL DEMANDED |
| CIRCLE K STORE, INC., *et al.,* | § | |
| | § | |
| *Defendants.* | § | |
| | § | |

---

**PLAINTIFF GEOTAG, INC.'S RESPONSE TO DEFENDANT FRED'S, INC.'S
MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

---

**BUETHER JOE & CARPENTER, LLC**

Eric W. Buether
Christopher M. Joe
Brian A. Carpenter
Monica Tavakoli
Niky Bukovcan
Mark D. Perantie

1700 Pacific Avenue
Suite 2390
Dallas, Texas 75201
Telephone:    (214) 466-1272
Facsimile:    (214) 635-1828

**ATTORNEYS FOR PLAINTIFF
GEOTAG, INC.**

# TABLE OF CONTENTS

I.   INTRODUCTION ........................................................................................................... 1

II.  BACKGROUND ............................................................................................................ 1

III. GENERAL PRINCIPLES GOVERNING PERSONAL JURISDICTION ....................... 5

    A.   Minimum Contacts.................................................................................................. 6

    B.   Traditional Notions of Fair Play and Substantial Justice ........................................ 8

IV.  ARGUMENT.................................................................................................................. 9

    A.   Fred's has Purposefully Availed Itself of the Benefits and Protections of
        Texas by Establishing Minimum Contacts ............................................................. 9

        1.   Fred's Business Activities Within the Forum Justify Exercise of
            General Jurisdiction ................................................................................... 9

        2.   Fred's Interactive Websites Justify Exercise of Specific and
            General Jurisdiction ................................................................................. 10

    B.   The Exercise of Personal Jurisdiction over Fred's is in Accordance with
        Traditional Notions of Fair Play and Substantial Justice ...................................... 15

# TABLE OF AUTHORITIES

## Cases

*AdvanceMe, Inc. v. Rapidpay LLC,*
    450 F. Supp. 2d 669 (E.D. Tex. Feb. 16, 2006)............................................ 5, 6, 10, 14, 15

*Alpine View Co. Ltd. v. Atlas Copco AB,*
    205 F.3d 208 (5th Cir. 2000) ................................................................................ 5

*American Eyewear, Inc. v. Peeper's Sunglasses and Accessories, Inc.,*
    106 F. Supp. 2d 895 (N.D. Tex. 2000) ................................................................. 8

*Asahi Metal Indus. Co. v. Superior Court,*
    480 U.S. 102 (1987)............................................................................................... 6

*Bearry v. Beach Aircraft Corp.,*
    818 F.2d 370 (5th Cir. 1987) ............................................................................... 6

*Burger King Corp. v. Rudzewicz,*
    471 U.S. 462 (1985)........................................................................................... 7, 8

*Campbell Pet Co. v. Miale,*
    542 F.3d 879 (Fed. Cir. 2008)...................................................................... 13, 15

*Carrot Bunch Co., Inc. v. Computer Friends, Inc.,*
    218 F. Supp. 2d 820 (N.D. Tex. Aug. 14, 2002)................................................. 8

*Diem v. Quinn Hotel Praha, A.S.,*
    2012 U.S. Dist. LEXIS 19022 (S.D. Tex. Feb. 15, 2012) ......................... 13, 14

*Elecs. For Imaging, Inc. v. Coyle,*
    340 F.3d 1344 (Fed. Cir. 2003)........................................................................... 8

*Guidry v. United States Tobacco Co.,*
    188 F.3d 619 (5th Cir. 1999) ............................................................................... 8

*McFadin v. Gerber,*
    587 F.3d 753 (5th Cir. 2009) ........................................................................... 5, 6

*Mieczkowski v. Masco Corp.,*
    997 F. Supp. 782 (E.D. Tex. Mar. 18, 1998) ..................................................... 6

*Mink v. AAAA Development, L.L.C.*,
    190 F.3d 333 (5th Cir. 1999) ................................................................. 7, 8, 10, 12, 14, 15

*Moncrief Oil Int'l, Inc. v. OAO Gazprom*,
    481 F.3d 309 (5th Cir. 2007) ............................................................................. 6

*Paz v. Brush Eng'r Materials, Inc.*,
    445 F.3d 809 (5th Cir. 2006) ............................................................................. 6

*Powerhouse Prods., Inc. v. Widgery*,
    564 F. Supp. 2d 672 (E.D. Tex. March 26, 2008) ................................................. 7, 14, 15

*Revell v. Lidov*,
    317 F.3d 467 (5th Cir. 2002) ........................................................................ 13, 14

*Silent Drive, Inc. v. Strong Indus., Inc.*,
    326 F.3d 1194 (Fed. Cir. 2003) ......................................................................... 5, 7

*Stuart v. Spademan*,
    772 F.2d 1185 (5th Cir. 1985) ........................................................................... 11

*Trintec Industries, Inc. v. Pedre Promotional Products, Inc.*,
    395 F.3d 1275 (Fed. Cir. 2005) ....................................................................... 13, 14, 15

*Versata Software, Inc. v. Internet Brands, Inc.*,
    2009 U.S. Dist. LEXIS 90935 (E.D. Tex. Sept. 30, 2009) ....................................... 10, 14

*Wilson v. Belin*,
    20 F.3d 644 (5th Cir. 1994) ............................................................................. 6

*Zippo Mfg. Co. v. Zippo Dot Com, Inc.*,
    952 F. Supp. 1119 (W.D. Pa. 1997) ................................................... 7, 8, 10, 11, 12, 14, 15

## Statutes

FED. R. CIV. P. 12 ....................................................................................... 1, 5

FED. R. CIV. P. 15 .......................................................................................... 1

Plaintiff GeoTag, Inc. ("GeoTag") files this response in opposition to the Motion to Dismiss for Lack of Personal Jurisdiction filed by Defendant Fred's, Inc.'s ("Fred's").

## I.   INTRODUCTION

Fred's has failed to demonstrate that this case should be dismissed for lack of personal jurisdiction.   GeoTag has alleged that Fred's has infringed the patent-in-suit through the operation of two interactive websites that it owns and operates.   The accused websites are highly interactive and clearly establish the basis for this Court to exercise personal jurisdiction over Fred's under this Court's prior decisions on the subject.   In addition, Fred's has admitted in its SEC filings that it operates 18 stores in Texas, including a store located in Marshall, Texas. Fred's also holds a Texas Taxpayer Number and an account with the Texas Comptroller's Office to pay the Texas Franchise Tax.   Thus, this Court has both general and specific personal jurisdiction over Fred's in this case, and Fred's motion to dismiss should be denied.

## II.   BACKGROUND

**A.  Plaintiff GeoTag**.   GeoTag is the owner of U.S. Patent No. 5,930,474 ("the '474 Patent") entitled "Internet Organizer for Accessing Geographically and Topically Based Information."   GeoTag commenced the present action on September 13, 2011, when it filed its complaint against Circle K Store, Inc. ("Circle K"), accusing Circle K of infringing the '474 Patent.   Dkt. No. 1.   As authorized under Fed. R. Civ. P. 15 (a), GeoTag then amended the complaint on October 25, 2011, properly joining Fred's.[1]   Dkt. No. 10.   GeoTag contends that Fred's   websites,   www.fredsinc.com   and   www.careersatfreds.com,   both   associate   online

---

[1]   Fred's alleges that GeoTag "only joined Fred's, and legions of other defendants, in this suit in an attempt to circumvent the Leahy-Smith America Invents Act."   Dkt. No. 141 at 7.   Since these issues have been addressed by GeoTag in its response, Dkt. No. 101, and sur-reply, Dkt. No. 108, to the Motion to Dismiss for Misjoinder, Dkt. No. 33, and are not relevant to the issues addressed in this pending motion, GeoTag will not repeat its responsive arguments here and instead incorporates by reference the arguments in the cited briefings.

1

information with geographic areas and fall squarely within the claimed methods and systems of the '474 Patent.

**B.  Defendant Fred's**.  Fred's is a publicly owned company incorporated in Tennessee with its principal place of business in Memphis, Tennessee.  *See* Exhibit A.  Fred's states in its 2010 Form 10-K that it "operates 653 (as of January 29, 2011) discount general merchandise stores in fifteen states primarily in the southeastern United States."  *Id*. at 4.  Of those 653 Fred's retail store locations, **18 are located in Texas**.  *Id*. at 14.

**C.  Fred's Store Website (www.fredsinc.com)**  Fred's owns and operates the accused www.fredsinc.com website.  Dkt. No. 141 at 2.  The www.fredsinc.com website provides a variety of interactive pages that a user can access through the home page.  *See* Exhibit B.  For example, a user interested in finding the nearest Fred's can do so by entering the user's city, state or zip code in the "Find A Store" feature on Fred's home page.  *Id*.  When entering "Marshall, TX," the search returns 4 locations within 30 miles of Marshall.  Exhibit M.  When expanded to 75 miles, the search returns 21 results. Exhibit N.  Similarly, a user interested in finding the nearest Fred's location that includes a pharmacy can use the "Find A Pharmacy" feature on Fred's home page and go through the same process described for the "Find A Store" feature described above.  Exhibit B.

The "Current Ad" section of the website, www.fredsinc.com/StoreAd.aspx, allows a user to browse through the current ad either by "flipping the page," selecting a specific category, or searching the ad for a specific product.  Exhibit C.  If something in the ad is of interest to the user, the user may add that item to the user's shopping list by clicking on "Add to List."  Exhibit D.  Once the user has finished shopping the current ad, the user can further interact with the shopping list by changing the desired quantity of a product, deleting the product, adding a note to

2

a specific item, or printing the list.  Exhibit E.

In the "Coupons" section of the website, www.fredsinc.com/Coupons.aspx, a user can browse through all the coupons offered by Fred's by "flipping the page," selecting a specific category or selecting a specific brand.  Exhibit F.  The user can select a coupon by clicking on the "Clip Coupon" and the coupon will be added to the user's list, which the user can print after all the desired coupons have been "clipped."  *Id*.

Users interested in providing feedback to Fred's can do so in the "Ask Fred/Tell Fred" section, www.fredsinc.com/feedback.aspx.  Exhibit G.  In sharing an opinion, the user may "indicate the location of the store in question (if applicable)."  *Id*.  The user may provide the address, city and state of the store in question.  *Id*.  The dropdown menu for the state of the store in question does not list all fifty states, but it does list Texas, obviously because Fred's has 18 store locations in Texas.  *Id*.  A user can also provide feedback by calling "1-800-374-7417 ext. 2163" or by mailing correspondence to "**Fred's Inc.**, Attn: Service Center, 4300 New Getwell Road, Memphis, TN 38118."  Exhibit H (emphasis added).

Fred's also provides users with online access to its pharmacies.  The pharmacy section, www.fredsinc.com/pharmacyHome.aspx, allows a user to register for an account.  Exhibit K.  As part of the account registration process, the user provides the user's name, address, phone number and email address.  Exhibit L.  On the account registration form, Texas is listed as an option for the user's state.  *Id*.  After registering for an account, the user may submit a new prescription or refill or transfer an existing prescription.  Exhibit K.  The user may also review the user's prescription history.  *Id*.

Applicants interested in employment with Fred's may click on the "Careers" link or the "Rx Careers" link from the home page.  Exhibit B.  By clicking either of these links, the

applicant is rerouted to www.careersatfreds.com, which is described in more detail below.

**D. Fred's Career Website (www.careersatfreds.com)**   GeoTag has also accused www.careersatfreds.com of infringement.   Dkt. No. 10 at 25-26.   Fred's does not address this website in its Motion to Dismiss, or challenge GeoTag's allegation that the website is interactive and constitutes doing business in Texas.   *See* Dkt. No. 10 at ¶ 57.

Tellingly, the contact information at www.careersatfreds.com is identical to the contact information provided at www.fredsinc.com.   *See* Exhibits H and O.   Also, as discussed above, when a user clicks on the "Careers" or "Rx Careers" link from www.fredsinc.com, the user is rerouted to www.careersatfreds.com.   The page at www.careersatfreds.com/index.htm provides job applicants with a variety of interactive pages that allow an applicant to apply for a position. Exhibit P.

Jobs at www.careersatfreds.com are divided into two categories: "Store Opportunities" and "Pharmacy Opportunities."   *Id*.   Store opportunities can be searched by job title, job type, keyword, or location.   Exhibit Q.   A Texan interested in the "Operations Expert" position in Whitehouse, Texas, can select this specific listing.   Exhibit R.   Once the applicant selects the specific job, the applicant is presented with the job description and requirements.   Exhibit S.   If the applicant is interested in applying for this position, the applicant can click on the "Apply for this job."   *Id*.   The applicant must then acknowledge that the applicant meets the requirements indicated by Fred's for the position by clicking on "Yes, I meet the requirements."   Exhibit T. Next, the applicant must provide his name, email address, resume, cover letter (optional), and acknowledge acceptance of Fred's Terms of Use and Privacy Policy.   Exhibit U.   Once this application is complete, the applicant may submit it by clicking "Send Application."   *Id*.   The applicant is then required to submit a questionnaire containing the applicant's name, email

4

address, phone number, country, address, city, state and zip code.  Exhibit V.  After the applicant clicks on the "Submit Questionnaire," Fred's indicates successful receipt of the application. Exhibit W.  Fred's also sends the applicant an email to acknowledge receipt of the application. Exhibit X.  This email thanks the applicant for his interest in "Fred's, Inc." and is signed by "The Executive Management Team at Fred's, Inc."  *Id*.  Similarly, an applicant interested in applying for a "Pharmacy Opportunity" can follow the same steps described above to apply for a specific position.  *See generally* Exhibit Y.

Alternatively, an applicant has the option to "Post Your Resume" to be considered for all store opportunities within Fred's.  Exhibit Q.   To post a resume, the applicant must also provide his name and email address and submits the application by clicking on "Upload Resume." Exhibit Z.  Finally, Fred's indicates that the posting is successful.  Exhibit AA.

### III.    GENERAL PRINCIPLES GOVERNING PERSONAL JURISDICTION

When a non-resident defendant files a 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff need merely "present sufficient facts as to make out only a *prima facie* case supporting jurisdiction." *Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000). The court must accept as true all of the plaintiff's uncontested allegations and construe all of the facts and pleadings in a light most favorable to the plaintiff. *Id.*

The determination of the exercise of personal jurisdiction in patent infringement cases is "intimately related to patent law" such that Federal Circuit law governs the issue. *AdvanceMe, Inc. v. Rapidpay LLC*, 450 F. Supp. 2d 669, 673 (E.D. Tex. Feb. 16, 2006) (quoting *Silent Drive, Inc. v. Strong Indus., Inc.*, 326 F.3d 1194, 1201 (Fed. Cir. 2003)). To determine if the exercise of personal jurisdiction is appropriate, the court must undertake a two-step analysis. *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009). The first step requires the court to assess the scope of the forum state's long-arm statute. *Id.* The second step is to determine if the exercise of personal

jurisdiction comports with the Due Process Clause of the Fourteenth Amendment. *Id.*

Texas' long-arm statute authorizes the exercise of jurisdiction over non-residents "doing business" in Texas.  *Oasis Research, LLC v. Adrive, LLC*, 2011 U.S. Dist. LEXIS 80466, at *6 (E.D. Tex. May 23, 2011).   The Texas Supreme Court has interpreted the "doing business" requirement broadly, allowing the long-arm statute to reach as far as the federal Constitution limits.  *Id.*   Because the Texas long-arm statute "reaches as far as the federal constitutional requirements of due process," the analysis "collapses into the federal due-process inquiry." *AdvanceMe*, 450 F. Supp. 2d at 673; *McFadin*, 587 F.3d at 759; *Moncrief Oil Int'l, Inc. v. OAO Gazprom*, 481 F.3d 309, 311 (5th Cir. 2007).

The requirement for due process is met if: (1) the defendant has "purposefully availed [itself] of the benefits and protections of the forum state by establishing "minimum contacts with the forum state," and (2) exercising personal jurisdiction "does not offend traditional notions of fair play and substantial justice." *Asahi Metal Indus., Co. v. Superior Court*, 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987); *Paz v. Brush Eng'r Materials, Inc.*, 445 F.3d 809, 813 (5th Cir. 2006).

## A.     Minimum Contacts

Minimum contacts with the forum state may be established either through "general personal jurisdiction" or "specific personal jurisdiction." *Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994). General personal jurisdiction exists when the defendant has "continuous and systematic" contacts with the forum. *Mieczkowski v. Masco Corp.*, 997 F. Supp. 782, 785 (E.D. Tex. Mar. 18, 1998) (quoting *Bearry v. Beach Aircraft Corp.*, 818 F.2d 370, 374 (5th Cir. 1987)). Specific jurisdiction exists where a plaintiff alleges that "a controversy is related to or 'arises out of' a defendant's contacts with the forum." *Wilson*, 20 F.3d at 647. The plaintiff satisfies the due process inquiry for specific jurisdiction when (1) the defendant purposefully directs its activities

at residents of the forum state, and (2) the claim "arises out of" or "relates to" those activities. *Powerhouse Prods., Inc. v. Widgery*, 564 F. Supp.2d 672, 678 (E.D. Tex. March 26, 2008) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985); *see also Silent Drive*, 326 F.3d at 1202 (noting that a third factor sometimes listed, "whether assertion of personal jurisdiction is 'reasonable and fair,'" actually corresponds to the "fair play and substantial justice" prong of the due process analysis). Specific jurisdiction "can exist even if the defendant's contacts are isolated and sporadic." *Silent Drive*, 326 F.3d at 1200. "Due Process Clause may not readily be wielded as a territorial shield to avoid interstate obligations that have been voluntarily assumed." *Burger King*, 471 U.S. at 472-73.

When dealing with personal jurisdiction of a non-resident defendant due to the use of its website, the Federal Circuit has not yet defined the standard for minimum contacts involving a website. *AdvanceMe*, 450 F. Supp. 2d at 673. The Fifth Circuit has adopted the sliding scale-test put forth in *Zippo*, which it first set forth in *Mink*. *Mink v. AAAA Development, L.L.C.*, 190 F.3d 333, 336 (5th Cir. 1999) (adopting *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997)). Under the *Mink/Zippo* standard, the level of a website's commercial activities is categorized and described as follows:

> At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper.

> At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions. A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise personal jurisdiction.

> The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise of

7

> jurisdiction is determined by examining the level of interactivity and commercial
> nature of the exchange of information that occurs on the Web site.

*Mink*, 190 F.3d at 333 (quoting *Zippo*, 952 F. Supp. at 1124). The *Mink/Zippo* standard has been

applied to the analysis of both general and specific jurisdiction based upon contacts with a forum

based upon the operation of a website. *Carrot Bunch Co., Inc. v. Computer Friends, Inc.*, 218 F.

Supp. 2d 820, 826 (N.D. Tex. Aug. 14, 2002); *see also American Eyewear, Inc. v. Peeper's*

*Sunglasses and Accessories, Inc.*, 106 F. Supp. 2d 895, n. 10 (N.D. Tex. 2000).

**B.     Traditional Notions of Fair Play and Substantial Justice**

Once the plaintiff shows that there are sufficient minimum contacts to satisfy due

process, it becomes defendant's burden to present a "compelling case that the presence of some

other consideration would render jurisdiction unreasonable." *Elecs. for Imaging, Inc. v. Coyle*,

340 F.3d 1344, 1351-52 (Fed. Cir. 2003). In making this determination, the court must consider

the following five factors:

> (1) The burden on the defendant; (2) the interests of the forum state; (3) the plaintiff's
> interest in obtaining relief; (4) the interstate judicial system's interest in obtaining
> the most efficient resolution of controversies; and (5) the shared interests of the several states
> in furthering fundamental substantive social policies.

*Paz*, 445 F.3d at 814; *Elecs. for Imaging*, 340 F.3d at 1351. It is "rare" for a defendant to

establish that where the requirements for minimum contacts are met the exercise of jurisdiction

would be unreasonable. *Id.* at 1352. These considerations may "serve to establish the

reasonableness of jurisdiction upon a lesser showing of minimum contacts that would otherwise

be considered." *Burger King*, 471 U.S. at 477; *Guidry v United States Tobacco Co.*, 188 F.3d

619, 631 (5th Cir. 1999). Because "modern…communications have made it much less

burdensome for a party sued to defend himself in a State where he engages in economic activity,

it usually will not be unfair to subject him to the burdens of litigation in another forum for

disputes relating to such activity." *Burger King*, 471 U.S. at 474.

## IV.     ARGUMENT

**A.      Fred's has Purposefully Availed Itself of the Benefits and Protections of Texas by Establishing Minimum Contacts**

This Court's exercise of personal jurisdiction over Fred's is proper under both general and specific personal jurisdiction.

### 1.      Fred's Business Activities Within the Forum Justify Exercise of General Jurisdiction

General personal jurisdiction exists when a defendant has "continuous and systematic" contacts with the forum. *Mieczkowski*, 997 F. Supp. at 785.  Fred's argues that general personal jurisdiction cannot be established because "Fred's has no office in Texas, no property in Texas, and conducts no business in Texas."  Dkt. No. 141 at 4.  This argument, however, fails because Fred's *is* doing business in Texas.

Fred's allegation that it does not conduct business in Texas is false and is contradicted by its statement in its 2010 Form 10K that it operates 18 stores located in Texas.  Moreover, Fred's has obtained a Texas Taxpayer Number and has established an account with the Texas Comptroller's office to pay Texas Franchise Tax.  Exhibit DD. This account is currently "in good standing…through May 15, 2012." *Id.*[2]  If Fred's did not conduct business in Texas as it claims, it would not be required to pay Franchise Tax to the state of Texas and would therefore, have no need to establish an account with the Texas Comptroller's office to pay Texas Franchise Tax.  This evidence establishes that Fred's recognizes that it is "doing business in Texas" and, therefore, this Court's exercise of personal jurisdiction over Fred's is proper.

---

[2]   According to the Texas Comptroller's website, "Texas Franchise Tax is a privilege tax imposed on each taxable entity…**doing business in Texas**."  Texas Franchise Tax, http://www.window.state.tx.us/taxinfo/franchise/ (last visited Mar. 13, 2012) (emphasis added).

2.     **Fred's Interactive Websites Justify Exercise of Specific and General Jurisdiction**

The accused websites www.fredsinc.com ("store website") and www.careersatfreds.com ("career website") clearly fall within the *Mink/Zippo* middle ground and their level of interactivity and commercial nature meets the requisite standard.  In cases where this Court has found that personal jurisdiction was proper based upon the operation of a website, the level of interactivity and commercial nature of the site was similar to the websites at issue here.  *See AdvanceMe*, 450 F. Supp. 2d at 673; *Versata Software, Inc. v. Internet Brands, Inc.*, 2009 U.S. Dist. LEXIS 90935 (E.D. Tex. Sept. 30, 2009).  For example, in *AdvanceMe*, the defendant's website allowed a potential customer to calculate the amount of cash it could receive from the defendant, had a drop-down menu that allowed the potential customer to identify his state, and provided the option of filling out an on-line form in order to apply for the defendant's services through its website.  *AdvanceMe*, 450 F. Supp. 2d at 673.  Because of these features, the court determined that the interactivity and commercial nature of the website were sufficient to establish minimum contacts.  *Id.* at 673-74.

Similarly, in *Versata*, the defendant's website allegedly infringed Versata's patents. *Versata Software, Inc.*, 2009 U.S. Dist. LEXIS at *4.  The defendant's website "allow[ed] customers, including residents of this district, to compare and price locally available vehicles." *Id*.  Because of these facts, the court determined that Versata had made a prima facie showing that exercise of personal jurisdiction was appropriate.  *Id*. at 4-5.

Likewise, in this case, Fred's operation of the accused websites is more than sufficient to satisfy the minimum contacts necessary for the establishment of personal jurisdiction.  As discussed above, Fred's career website solicits potential employees from all over the country, and specifically solicits residents of Texas to seek employment with it.  Fred's store website

10

allows any users from Texas to sign up for a pharmacy account.  Customers can interact with the "Current Ad" page by browsing the ad page by page or by category, searching the ad for a specific product, or adding items to a shopping list.  Similarly, its "Coupons" page allows a user to browse current coupon offerings page by page or by brand, and add coupons to a list.  Its "Ask Fred/Tell Fred" page provides Texas residents an opportunity to comment on Fred's services and products.  Any Texas resident who has recently visited a local store may wish to provide feedback.[3]  Additionally, Fred's "Find A Store" and "Find A Pharmacy" features, two accused instrumentalities that infringe the patent-in-suit, are fully interactive and invite any Texas resident to finding a nearby Fred's location to input his city, state or zip code.

Although Fred's admits that its websites provide this high degree of interactivity, it argues that "this function is not targeted directly at Texas but works for any zip code in the country."  Dkt. No. 141 at 5.  While the functionality does not prevent a user from inputting any zip code in the country, even Fred's admits that this functionality is intended to allow a "[website] visitor to input his or her city, state or zip code to **locate the nearest store location**." *Id*. (emphasis added).  Since Fred's has 18 store locations in Texas, this accused functionality is obviously directed at customers residing in this district.

Despite the clearly interactive nature of www.fredsinc.com and www.careersatfreds.com, and despite the fact that the websites are unequivocally directed to consumers in Texas, Fred's argues that its websites are "passive because no purchases can occur via the website[s], nor are there any charges or fees sought from website users."  Dkt. No. 141 at 6.  To support its contention, Fred's cites *Zippo* and *Oasis*.  These cases, however, demonstrate that personal

---

[3] Fred's argues that "[w]hile visitors to the site may submit feedback, there is no "live chat" option as is found on more active websites."  Although a "live chat" option may enhance a website's interactive nature, the lack of a "live chat" option does not indicate that the website is not sufficiently interactive to support personal jurisdiction.

jurisdiction over Fred's is appropriate in this case.

The court in *Zippo* clearly stated that it was "not being asked to determine whether [the defendant's] Web site alone constitutes the purposeful availment of doing business in [the forum]." *Zippo Mfg. Co.*, 952 F. Supp. at 1125.  However, the court in *Zippo* observed that the "nature and quality of commercial activity that an entity conducts over the Internet" should be examined when determining whether a website alone is sufficient to establish personal jurisdiction.  *Id*.  Accordingly, here, the Court needs to consider the "nature and quality of commercial activity" of Fred's website since the Fifth Circuit adopted the *Zippo* standard in *Mink*.  *Mink*, 190 F.3d at 336.  As discussed above, Fred's website is clearly interactive and satisfies the standard established under *Mink/Zippo*.

In *Oasis*, the court determined that the defendant's website was interactive because it "allow[ed] users to choose the version of 'Online File Folder' they wish to purchase, attempt[ed] to sell additional services to the customer, require[d] the customer to enter his name, address, select his state from a drop-down menu, and create[d] a login and password…Also, the service allow[ed] Texas customers to store and retrieve files on [defendant's] servers…Further, Texas customers may also receive customer support directly through the website."  *Oasis Research, LLC*, 2011 U.S. Dist. LEXIS 80466 at *14.  None of the factors analyzed by the *Oasis* court dealt with purchase or payment by the user.  Instead, the factors in *Oasis* are merely examples of activities demonstrating the interactive nature of a website.

Furthermore, *Oasis* does not require that a defendant "generate income from forum residents" to "purposefully direct[] its activities to forum residents" as Fred's purports.  Dkt. No. 141 at 6.  In analyzing whether the defendant had the requisite minimum contacts to be subjected to personal jurisdiction in Texas, the court considered whether "the defendants performed

additional acts to purposefully avail themselves to the forum state." *Oasis Research, LLC*, 2011 U.S. Dist. LEXIS 80466 at *15.  The *Oasis* court indicated that in other cases, defendants have been found to purposefully direct their activities to the forum state where forum residents use the allegedly infringing website in the forum, defendants generate income from the forum residents, and websites offer customer service options to forum residents.  *Id*.  The court merely suggested that generation of income from forum residents may indicate that the defendant was purposefully directing its activities to forum residents.  Even if *Oasis* requires generation of income from forum residents (which it does not), Fred's ultimately generates income from forum residents through its website.  As discussed above, the "Find A Store" and "Find A Pharmacy" features on Fred's website are intended to convert internet traffic into actual store traffic.  The "Current Ad," "Coupons," and "Pharmacy" pages of www.fredsinc.com also encourage website visitors into Fred's brick and mortar locations.  By encouraging website visitors to visit one of its 21 brick and mortar locations within 75 miles of Marshall, Fred's is able to generate income from forum residents.

The facts of this case establish that www.fredsinc.com and www.careersatfreds.com purposefully direct its activities at residents of Texas through these interactive websites.  Fred's contention that it conducts no business with Texas residents is based on a conclusory declaration that is contradicted by Fred's SEC filings and the operation of its websites.

To support its contention that there is no general personal jurisdiction, Fred's cites *Revell*, *Trintec*, *Diem*, and *Campbell*.  Fred's reliance on these cases is misplaced as the present case can easily be distinguished from each of these cases.  *Revell* involved a defamation action where the activities did not arise out of solicitation of subscriptions or applications but by alleged activities posted on an internet bulletin board.  *Revell v. Lidov*, 317 F.3d 467 at 472 (5th Cir. 2002).

13

Unlike the site in *Revell*, www.fredsinc.com site is entirely a solicitation tool aimed at luring Texas customers to Fred's stores in Texas.  All of the linked pages on www.fredsinc.com encourage website visitors to visit Fred's stores, including those located in Texas.  Its "Find A Store" and "Find A Pharmacy" features are particularly designed to convert internet traffic to actual store traffic.

In *Trintec*, the court discussed in *dicta* the general legal principles relating to whether the operation of a website conferred personal jurisdiction over the website operator, but specifically stated that "[w]e need not decide that question here, however, since Trintec does not rely solely on Pedre's website as the basis for jurisdiction."  *Trintec Indus.*, 395 F.3d at 1281.  Unlike *Trintec*, Fred's alleges that the website is the sole basis for jurisdiction.  Dkt. No. 141 at 3.  When analyzing whether non-resident defendant's use of its website is sufficient to invoke personal jurisdiction, the Fifth Circuit applies the *Mink/Zippo* standard.  *Mink*, 190 F.3d at 336.  As discussed above, Fred's websites clearly satisfy the requisite standard under *Mink/Zippo*.

In *Diem*, the court stated that "the mere accessibility of a website in the forum state, without more, does not indicate that [defendant]…purposefully directed the contact at the forum state."  *Diem v. Quinn Hotel Praha, A.S.*, 2012 U.S. Dist. LEXIS 19022, at *9 (S.D. Tex. Feb. 15, 2012).   The court, however, distinguished the case before it from *AdvanceMe* and *Powerhouse*, reasoning that in both those cases, the "act of placing the infringing information on the website comprised the legal injury of which the plaintiffs complain."  *Id*. at *11. *Diem*, however, involved personal injuries and loss of consortium based on negligence, which is completely unrelated to the commercially interactive website.  *Id*.  Unlike *Diem*, and like *AdvanceMe* and *Powerhouse*, Fred's store and career websites are purposefully directed at Texas residents, inducing them to visit Fred's stores located in Texas and soliciting employment of

14

Texas residents, as discussed above.  Furthermore, this case is more akin to *AdvanceMe* and *Powerhouse* since the Fred's store website and career website, the accused instrumentalities of the patents-in-suit, comprises the legal injury of which GeoTag complains.  Accordingly, *Diem* does not apply to the facts of this case.

Finally, in *Campbell*, the plaintiff argued that "general jurisdiction could be found based on the defendants' website" alone and 12 sales over eight years resulting in only approximately $14,000 in revenue.  *Id*. at 882.  In ruling that this limited website interaction with the forum state was insufficient to establish general jurisdiction, the court found that "the ability of [forum] residents to access the defendant's website…does not by itself show any persistent course of conduct by the defendants in the [forum]."  *Id*. at 884 (citing *Trintec*, 395 F.3d at 1281).  Here, however, GeoTag is not relying only on Fred's website alone to establish general jurisdiction.  According to Fred's 2010 Form 10-K Filing, it has 18 locations within Texas.  Exhibit A at 14.  Fred's also has an account with the Texas Comptroller's office to pay Franchise Tax.  Exhibit DD.  These facts, combined with Fred's highly interactive websites directed at Texas residents, establish continuous and systematic contacts with the forum and thus, general jurisdiction is proper.

Thus, the exercise of general and specific jurisdiction under the *Mink/Zippo* test for a finding of minimum contacts is well supported, given the level of interactivity and the commercial nature of Fred's websites.

**B.     The Exercise of Personal Jurisdiction over Fred's is in Accordance with Traditional Notions of Fair Play and Substantial Justice**

Fred's contention that defending itself in this case would place a significant burden on it is incredulous.  Fred's has annual revenues approaching $2 billion a year and operates 18 stores located in Texas.

15

Dated: March 19, 2012

Respectfully submitted,

**BUETHER JOE & CARPENTER, LLC**

By:   */s/ Eric W. Buether*
      Christopher M. Joe (Lead Counsel)
      State Bar No. 00787770
      Chris.Joe@BJCIPLaw.com
      Eric W. Buether
      State Bar No. 03316880
      Eric.Buether@BJCIPLaw.com
      Brian A. Carpenter
      State Bar No. 03840600
      Brian.Carpenter@BJCIPLaw.com
      Monica Tavakoli
      State Bar No. 24065822
      Monica.Tavakoli@BJCIPLaw.com
      Niky Bukovcan
      State Bar No. 24078287
      Niky.Bukovcan@BJCIPLaw.com
      Mark D. Perantie
      State Bar No. 24053647
      Mark.Perantie@BJCIPLaw.com

      1700 Pacific Avenue
      Suite 2390
      Dallas, Texas 75201
      Telephone:   (214) 466-1272
      Facsimile:   (214) 635-1828

      **ATTORNEYS FOR PLAINTIFF**
      **GEOTAG, INC.**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a) on this 19th day of March, 2012.  Any other counsel of record will be served by facsimile transmission and first class mail.

*/s/ Eric W. Buether*
Eric W. Buether

17