UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| GEOTAG INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:11–CV–405–MHS |
| | ) | |
| | ) | |
| CIRCLE K STORE, INC., *et al.*, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

### J. CREW'S MOTION TO SEVER AND TRANSFER

In the event the Court denies J. Crew's pending motion to drop it as a party for misjoinder (Dkt. No. 33), pursuant to 28 U.S.C. § 1404(a), Defendant J. Crew Group, Inc. ("J. Crew") moves to sever and transfer the claims asserted against it by Plaintiff GeoTag, Inc. ("GeoTag") to the United States District Court for the Southern District of New York "for the convenience of the parties and witnesses [and] in the interest of justice." 28 U.S.C. § 1404(a) (brackets added). J. Crew's motion is supported by the Declarations of Marc Saffer ("Saffer Decl.") and Stacy O. Stitham ("Stitham Decl"). J. Crew does not seek transfer of the entire action to New York, just GeoTag's lawsuit against J. Crew.

By scheduling order dated April 12, 2012, this Court set a June 20, 2012, deadline to file any motions to transfer the above–captioned proceedings. *See* Order to Meet, Report, and Appear at Scheduling Conference (Dkt. No. 317). J. Crew previously filed a motion to be dismissed for misjoinder under Fed. R. Civ. P. 21. (Dkt. No. 33). Furthermore, in its response to Defendants' Motion to Stay filed on June 18, 2012 (Dkt. No. 368), GeoTag concedes that the Defendants are misjoined under the Federal Circuit's recent decision in *In re EMC Corp.*, 677 F.3d 1351 (Fed.

Cir. 2012), because "the Defendants are 'not acting in concert' and there are no 'overlapping facts that give rise to each cause of action.'" Dkt. No. 368 at 2 (quoting *In re EMC Corp.*, 677 F.3d at 1359). Accordingly, there should be little doubt that the essence of J. Crew's misjoinder motion is correct, namely, that it should not have been sued together with Circle K Stores and dozens, now hundreds, of other, unrelated companies. Should the Court grant the relief requested in J. Crew's motion to dismiss for misjoinder, J. Crew must be dropped as a party, relief authorized by Fed. R. Civ. P. 21, a point never contested by GeoTag in its briefs in opposition to that motion. In the alternative, however, the proper outcome is to sever the claims against J. Crew into a separate action and transfer that action to the Southern District of New York.

## BACKGROUND

As proudly outlined on their website, J. Crew opened its flagship store at New York's South Street Seaport in the late 1980s. *See* "About Us," J. Crew, *available at* http://www.jcrew.com/help/about_jcrew.jsp (last visited June 14, 2012). Though its footprint has grown in the intervening years since its first catalog dropped in 1983, at least one thing has not changed: J. Crew remains headquartered in New York, New York, and does not have any corporate presence in the Eastern District of Texas. *See id.*; Saffer Decl. ¶ 6.

GeoTag is the owner by assignment of United States Patent No. 5,930,474 ("the '474 patent"). *See* Am. Compl. ¶ 59 (Dkt. No. 10). According to the Texas Secretary of State's Office, GeoTag's corporate presence in Texas may be measured in months—the company first filed with the State of Texas in October of 2011. *See* Stitham Decl. ¶ 5. During the span of its brief nexus with Texas, GeoTag has used the courts of the Eastern District to bring numerous lawsuits against *hundreds* of defendants, apparently on the theory that any company with a store and/or job locator feature on its website infringes the '474 patent. Indeed, the sheer quantity of

defendants to the respective GeoTag cases has made case management and administration a trying task for this Court.

The accusations in this lawsuit, insofar as they are directed against J. Crew's website, are in essence directed at conduct that occurred in the Southern District of New York. J. Crew employs over 990 people at its corporate headquarters in New York City. Saffer Decl. ¶ 7. Among such personnel are all employees knowledgeable about J. Crew's website, www.jcrew.com. *Id.* ¶¶ 8, 11. At J. Crew's New York headquarters can be found the source code and technical documents relating to the website. *Id.* ¶ 10. J. Crew's servers relating to or supporting the website are principally concentrated on the eastern seaboard. *Id.* ¶ 9. Conversely, none of J. Crew's servers, knowledgeable employees, or potentially relevant documents, is located in the Eastern District of Texas. *Id.* ¶¶ 8–11. To the extent GeoTag has accused J. Crew of infringing any claim of any of its asserted patent, it has pointed the finger at activities that took place (if anywhere) in New York directed by personnel (if anyone) located in New York.

## ARGUMENT

J. Crew moves this Court to transfer venue pursuant to 28 U.S.C. § 1404 to the Southern District of New York because the convenience of the parties, the convenience of the witnesses, and the interest of justice require such a transfer. Section 1404(a) provides: "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a); *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 (1981) (Section 1404(a) was enacted to allow "easy change of venue within a unified federal system"); *accord Veba–Chemie A.G. v. M/V Getafix*, 711 F.2d 1243, 1246 (5th Cir. 1983).

Motions to transfer patent actions, because they do not touch on issues of substantive patent law, are decided under the law of the regional circuit in which the district court sits. *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008) (mandamus granted directing transfer). Because J. Crew merely seeks a transfer of venue under Section 1404(a) and not a dismissal under the doctrine of *forum non conveniens*, the burden for such a transfer is less. *See In re Volkswagen of Am. Inc.*, 545 F.3d 304, 314 (5th Cir. 2008) ("[T]he burden that a moving party must meet to justify a venue transfer is less demanding than that a moving party must meet to warrant a *forum non conveniens* dismissal"); *accord Paltalk Holdings, Inc. v. Sony Computer,* 2010 WL 3517196, *3 (E.D. Tex. Sept. 3, 2010). "[T]he statute requires only that the transfer be '[f]or the convenience of the parties, in the interest of justice.' " *Volkswagen,* 545 F.3d at 314 (quoting *Veba–Chemie*, 711 F.2d at 1247).

### A. Venue Is Proper In New York

Before asking this Court to send this action north by northeast, we must address the preliminary question under Section 1404(a): Whether a civil action "might have been brought" in the destination venue. *Volkswagen,* 545 F.3d at 312. J. Crew is headquartered within the Southern District of New York and is plainly subject to jurisdiction there. *See* 28 U.S.C. § 1391(a)(1) & (3). *Cf. Innoband, Inc. v. Aso Corp.,* 2011 WL 835934, *2 (E.D. Tex. Mar. 4, 2011) (venue is proper in district encompassing defendant's headquarters due to the "substantial corporate presence" there). That is true regardless of whether the Southern District of New York has personal jurisdiction over GeoTag. *Cf. In re Genentech*, 566 F.3d 1338, 1346 (Fed. Cir. 2009) (Section 1404(a) only requires "that the transferee court have jurisdiction over the defendant[ ] in the transferred complaint," not over the plaintiff) (brackets added).

In contrast, GeoTag's connections to the Eastern District of Texas are relatively weak. Having acquired a Texas corporate presence just a few months ago, *see* Stitham Decl. ¶ 5, apparently for the purpose of bringing patent litigation in the Eastern District, GeoTag's choice of forum should be afforded little weight. *See, e.g., Greiner v. American Motor Sales Corp.,* 645 F. Supp. 277, 279 (E.D. Tex. 1986) ("[W]here none of the operative facts occur within the forum of plaintiff's original selection, his choice is entitled to only minimal consideration.") (brackets added; citation omitted); *Pinpoint, Inc. v. Groupon, Inc.,* 2011 WL 6097738, *2 (N.D. Ill. Dec. 5, 2011) ("[Plaintiff's] choice of forum is entitled to little weight, though, because this district has a weak connection with the operative facts of its claims.") (brackets added).

Therefore, J. Crew's motion to transfer easily clears the first hurdle for a Section 1404(a) transfer.

### B.  Convenience And The Interests Of Justice Heavily Favor Transfer

In ruling on a motion to transfer under Section 1404(a), the Court considers the private and public interests first outlined in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947). *See Volkswagen*, 545 F.3d at 315. The private interest factors recited by the Fifth Circuit include: "(1) relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id.* The public interest factors consider: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws." *Id.*

All of the relevant private and public interest factors weigh in favor of finding that the Southern District of New York is a significantly more convenient venue for this lawsuit and that transferring this case is in the interest of justice.

**1.** *Private Interest—Relative Ease of Access to Sources of Proof*

The first private interest factor weighs heavily in favor of transferring this case to the Southern District of New York—where virtually all if not all of the proof necessary to make or break this case is located. *See Volkswagen*, 545 F.3d at 316 ("[T]his Court has recently reiterated that the sources of proof requirement is a meaningful factor in the analysis."). Because of the nature of a patent infringement claim, the focus of the litigation is always on the alleged infringer's conduct. "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *Genentech*, 566 F.3d at 1345 (quotation omitted); *In re Link_A_Media Devices Corp.*, 662 F.3d 1221, 1224 (Fed Cir. 2011); *accord Software Rights Archive, LLC v. Google, Inc.,* 2010 WL 2950351, *2 (E.D. Tex. July 22, 2010); *West Coast Trends, Inc. v. Ogio Intern'l, Inc.,* 2011 WL 5117850, *2 (E.D. Tex. Oct. 27, 2011) (noting that the place where the defendant's documents are kept weighs in favor of transfer to that location) (citation omitted).

By GeoTag's own account, this case concerns J. Crew's website. In such an action, the *prima facie* sources of proof are the data, records, and source code that relate to the accused instrumentality. As explained above, such evidence will be found at the corporate headquarters of the defendant. In this case, that location is New York, New York. *See* Saffer Decl. ¶¶ 6, 10. "In infringement litigation involving Internet websites courts have tended to emphasize the location where the website is maintained—otherwise the alleged tort would be too diffuse to

6

pinpoint." *Pinpoint,* 2011 WL 6097738 at *2 (citation omitted). Put differently, "[k]eeping this case in the [Eastern District of Texas] will impose a significant burden on [J. Crew] to transport documents that would not be incurred if the case were to proceed in the [Southern District of New York]." *Genentech*, 566 F.3d at 1346 (brackets added). For the same reason, GeoTag's claim itself arises out of actions which took place in the Southern District of New York, where J. Crew's headquarters are, and where J. Crew employees perform the operations necessary to manage the website now at issue. *See, e.g., Mekiki Co., Ltd. v. Facebook, Inc.,* 2010 WL 2348740, *3 (D. Del. June 7, 2010) (plaintiff did not dispute that claims for infringement did not originate in Delaware, but at defendant's headquarters in Palo Alto where the website services allegedly using the patent at issue were developed); *Pinpoint,* 2011 WL 6097738 at *2 (situs of material events was District of Maine where plaintiff accused L. L. Bean of infringing conduct through operation of its website and promotional emails to customers); *Wireless Recognition Tech. LLC v. A9.com, Inc.,* 2012 WL 506669, *4 (E.D. Tex. Feb. 15, 2012) (finding Northern District of California a "clearly more convenient" forum, *inter alia,* because a large number of witnesses and sources of proof were located at the headquarters of defendants there).

Accordingly, the location of the sources of proof factor weighs strongly in favor of transferring this case closer to J. Crew's home. *See In re Horseshoe Entm't*, 337 F.3d 429, 434 (5th Cir. 2003) (reversing the district court's denial of a motion to transfer, and holding "[w]e think the Middle District Court erred in not giving significance to "the factor regarding the location of books and records' "); *Davis v. Signal Intern'l, LLC,* 2011 WL 2462296, *2 (E.D. Tex. June 17, 2011) (location of corporate records at headquarters in Mobile, Alabama, weighs in favor of transfer to a closer division); *see also In re Link_A_Media*, 662 F3d at 1224 (court must weigh these factors in transfer analysis).

### 2. *Private Interest—Availability of Compulsory Process of the Witnesses*

Fed. R. Civ. P. 45(b)(2)(B) provides that a district court has subpoena power over persons located outside the district if they are within 100 miles of the location of the proceeding. *Id.* All of the likely witnesses identified as of date of press—J. Crew employees—reside in and around New York City and are subject to the subpoena power of the Southern District of New York, not the Eastern District of Texas. *See* Saffer Decl. ¶ 11. J. Crew knows of no person involved in the operation, design, development, or maintenance of the website or any company–wide computer system residing within the subpoena power of the Eastern District of Texas. *Id.* Therefore, if anything, this factor tilts in favor of transfer.

### 3. *Private Interest—Cost of Attendance for Willing Witnesses*

It is likewise clear that the Southern District of New York is the most convenient forum for the witnesses because a significant number of J. Crew's witnesses reside within a short distance of the courthouse there. *See Wireless,* 2012 WL 506669 at *5 (significant number of party witnesses reside in proposed transferee forum, where defendants' corporate headquarters are). As such, it would be unduly costly—both in terms of expense and lost productivity—for J. Crew to be required to fly its witnesses more than a thousand miles to Texas in order to testify at trial. *See Volkswagen,* 545 F.3d at 317 (stating "it is an 'obvious conclusion' that it is more convenient for witnesses to testify at home") (citations omitted). This is important not only for purposes of attendance at trial, but also because the location of witnesses and evidence "necessarily implicate[s] the ease of conducting merits–related discovery in a location which is near the relevant witnesses and documents." *Enplanar, Inc. v. Marsh*, 11 F.3d 1284, 1291 (5th Cir. 1994).

GeoTag has already committed itself to litigating part of this case in New York by suing a New York company. Any corporate deposition of J. Crew, or deposition of New York–based witnesses, will necessitate travel to that state. *See Salter v. Upjohn Co.,* 593 F.2d 649, 651 (5th Cir. 1979) (noting that it is "well settled" that the deposition of a corporation should "ordinarily be taken at its principal place of business," especially when the corporation is the defendant) (citation omitted). Should this action remain in the Eastern District, however, J. Crew would face the more significant burden of litigating a case in Texas about its actions in New York. If this case goes forward in this District, J. Crew's witnesses will incur significant monetary costs for travel and lodging as well as personal costs of being away from work, family, and community. *Volkswagen*, 545 F.3d at 317 ("Witnesses not only suffer monetary costs, but also the personal costs associated with being away from work, family, and community."); *Remmers v. United States,* 2009 WL 3617597, *6 (E.D. Tex. Oct. 28, 2009) ("Additional distance means additional travel time; additional travel time increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time which these fact witnesses must be away from their regular employment").

On the other hand, GeoTag should require relatively few witnesses to testify about what a New York company and its New York–based employees allegedly did in New York to infringe the patents–in–suit. *See Software,* 2010 WL 2950351 at *2 ("In general, the ease of accessing the defendants' sources of proof weighs more heavily than the ease of plaintiff's proof, because the majority of relevant evidence in patent infringement suits usually comes from the accused infringers"). As the majority of the critical witnesses live and work in New York—and would face a far greater disruption to their work and lives from having to travel to Texas to appear for trial in this case—this factor too favors transfer.

Accordingly, (1) the cost of attendance for J. Crew's witnesses, (2) the burden and business interruption on J. Crew to have key employees travel to and testify in Texas, and (3) the relative minimal burden on GeoTag weigh in favor of transfer.

### 4. *All of the Relevant Public Interests Favor Transfer to New York*

The relevant public interest factors support a transfer under Section 1404(a). Because only federal, patent–related claims have been asserted in this action, there are no problems related to conflict of laws or judicial familiarity with the law. Federal, not Texas, law will govern in this case. *See Rembrandt Vision Technologies, LP v. Johnson & Johnson Vision Care, Inc.,* 2011 WL 2937365, *4 (E.D. Tex. July 19, 2011) ("…both the Middle District of Florida and the Eastern District of Texas are equally capable of applying patent law to infringement claims") (ellipses added).

Moreover, the more relevant public interest factor—having local interests decided locally—weighs in favor of transfer. The people of New York have a strong interest in having this case decided locally. J. Crew's facilities have been located in New York for decades, and the company employs over 990 people at its corporate headquarters alone. *See* Saffer Decl. ¶¶ 6–7. *See also Wireless,* 2012 WL 506669 at *6 (residents of proposed transferee forum "have a particularized interest in the subject matter of this lawsuit because the majority of the Defendants are headquartered there," the allegedly infringing products were developed there, and thousands of people are employed there); *accord Network,* 2012 WL 194382 at *7. Meanwhile, the Eastern District of Texas has at best the same generalized interest in a just result as any judicial district in the United States where J. Crew's website may be accessed. *See i2 Technologies, Inc. v. Oracle Corp.,* 2010 WL 3257645, *4 (E. D. Tex. Aug. 17, 2010) ("Generally, local interests that 'could apply virtually to any judicial district or division in the United States' are disregarded in favor of

particularized local interests") (citation omitted). *See also Volkswagen,* 545 F.3d at 318 (in a products liability suit, disregarding local interest of citizens who used the widely–sold product within the transferor venue).

As in *Volkswagen*, the local interests in this case strongly favor transfer to the Southern District of New York. Because of the nature of a patent infringement case, the focus of this litigation, as well as the proof at trial, will be on J. Crew and its actions performed in and directed from New York. *See* 35 U.S.C. § 292(a). Thus, the local interests of the Southern District of New York, where J. Crew is located, greatly outweigh any interests of having this case decided in this District. *See AT&T Intellectual Prop. I, L.P. v. Airbiquity, Inc.*, 2009 WL 774350, *1 (N.D. Tex. Mar. 24, 2009) (holding the residents of Washington had local interest in outcome of case because defendant "was based [there], and most, if not all, of its witnesses, evidence and business operations are there"). Accordingly, the Court should find that the local interests of the Southern District of New York favor transfer.

### C. GeoTag's Suggestion That The Cases Could Be "Deemed Severed" And Then Consolidated Is Untenable.

Although GeoTag concedes that the Defendants should be "deemed severed" under *In re EMC Corp.*, 677 F.3d 1351 (Fed. Cir. 2012), in its opposition to the defendants' motion to stay (Dkt. No. 355), in the very next breath, it argues that the cases then should be consolidated under Fed. R. Civ. P. 42. (Dkt. No. 368 at 2). That would effectively undermine the entire thrust of both *EMC* and *Volkswagen* by requiring unrelated parties to litigate in a jurisdiction in which venue is improper based on the plaintiff's decision to file suit in that forum. Indeed, the very portion of *EMC* quoted by GeoTag makes clear that the propriety of venue continues to be a limitation on the district court's discretion to join parties in a single lawsuit. *See In re EMC Corp.*, 677 F.3d at 1360 ("the district court has considerable discretion to consolidate cases for

11

discovery and for trial under Rule 42 *where venue is proper* and there is only a common question of law or fact") (quoted in Dkt. No. 368 at 2) (emphasis added and quotation omitted). Likewise, the other portion of *EMC* quoted by GeoTag makes clear that unrelated parties can be consolidated for pretrial purposes only under the aegis of the Judicial Panel on Multidistrict Litigation. *See In re EMC Corp.*, 677 F.3d at 1360 ("Common pretrial issues of claim construction and patent invalidity may also be *adjudicated together through the multidistrict litigation procedures* of 28 U.S.C. § 1407.") (quoted in Dkt. No. 368 at 2) (emphasis added). In other words, the very language of the Federal Circuit's opinion quoted by GeoTag undermines, not undergirds, GeoTag's suggestion that the Court could comply with the mandate of the Federal Circuit that unrelated Defendants may not be joined in a single patent infringement action by severing the unrelated Defendants and consolidating them together in the same case. The Federal Circuit plainly did not intend in *In re EMC* to bar the front door to misjoinder, but leave the back door ajar. The Court should either drop J. Crew as a misjoined party or, alternatively, sever and transfer the case against J. Crew to the Southern District of New York.

## CONCLUSION

Based on the foregoing, J. Crew respectfully requests that the Court grant its motion to sever and transfer to the Southern District of New York.


Dated: June 20, 2012                    Respectfully submitted,

                                        Jennifer Parker Ainsworth
                                        (State Bar No. 00784720)
                                        jainsworth@wilsonlawfirm.com
                                        Wilson, Robertson & Cornelius, P.C.
                                        One American Center
                                        909 ESE Loop 323, Suite 400
                                        Tyler, Texas 75701
                                        (903) 509–5000

                                        /s/ Stacy O. Stitham
                                        Peter J. Brann
                                        pbrann@brannlaw.com
                                        David Swetnam–Burland
                                        dsb@brannlaw.com
                                        Stacy O. Stitham
                                        sstitham@brannlaw.com
                                        BRANN & ISAACSON
                                        184 Main Street; P.O. Box 3070
                                        Lewiston, ME 04243–3070
                                        (207) 786–3566

                                        *Attorneys for J. Crew Group, Inc.*

**CERTIFICATE OF SERVICE**

I certify that on June 20, 2012, the foregoing document was filed electronically in compliance with Local Rule CV–5(a). As such, this document was served on all counsel who have consented to electronic service. Local Rule CV–5(a)(3)(A).

/s/ Stacy O. Stitham
Stacy O. Stitham

**CERTIFICATE OF CONFERENCE**

Counsel for J. Crew has complied with the "meet and confer" requirement of Local Rule CV–7(h). GeoTag opposes J. Crew's motion to transfer.

On June 14, 2012, counsel for J. Crew contacted counsel for GeoTag, regarding the possibility of transferring the claims against J. Crew in the above–captioned action to the Southern District of New York. GeoTag renewed its objection to J. Crew being dropped as a party from the above–captioned action, and opposed any transfer of GeoTag's claims against J. Crew to the Southern District of New York.

On June 19, 2012, on behalf of certain defendants to this matter, counsel from Fish & Richardson contacted GeoTag's counsel regarding the possibility of a motion to extend the deadline for transfer requests until after the Court resolved the joinder issues. Counsel for GeoTag refused to agree to the extension, and indicated it would oppose any severance of the claims against any particular defendant without simultaneous pretrial consolidation with the other actions pending in the Eastern District of Texas.

/s/ Peter J. Brann
Peter J. Brann