UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| **GEOTAG, INC.,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 2:11-CV-405-MHS |
| ) | |
| **CIRCLE K STORE, INC.,** *ET AL.,* ) | |
| ) | |
| Defendants. ) | |
| ) | |

**FRED'S, INC.'S MOTION TO SEVER AND TRANSFER**

In the event the Court denies Fred's, Inc.'s ("Fred's") pending motion to dismiss for lack of jurisdiction (Dkt. No. 141) and its motion to drop it as a party for misjoinder (Dkt. Nos. 33 & 120), pursuant to 28 U.S.C. § 1404(a), Fred's moves to sever and transfer the claims asserted against it by Plaintiff GeoTag, Inc. ("GeoTag") to the United States District Court for the Western District of Tennessee "for the convenience of the parties and witnesses [and] in the interest of justice." 28 U.S.C. § 1404(a) (brackets added). Fred's motion is supported by the Affidavits of Bradley McAdory, Esq. and James Deats, which were previously filed in support of Fred's motion to dismiss for lack of jurisdiction. Fred's does not seek transfer of the entire action to Tennessee, just GeoTag's lawsuit against Fred's.

By order dated June 20, 2012, this Court set a June 21, 2012, deadline to file any motions to transfer the above-captioned proceedings. *See* Order Denying Extension to File (Dkt. No. 374). Fred's previously joined in the motion to dismiss for misjoinder filed by Coldwater Creek, Inc., Draper's & Damon's, LLC, and J. Crew Group, Inc. (Dkt. Nos. 33 & 120). In GeoTag's response to Defendants' Motion to Stay filed on June 18, 2012 (Dkt. No. 368), GeoTag concedes

that the Defendants are misjoined under the Federal Circuit's recent decision in *In re EMC Corp.*, 677 F.3d 1351 (Fed. Cir. 2012), because "the Defendants are 'not acting in concert' and there are no 'overlapping facts that give rise to each cause of action.'" Dkt. No. 368 at 2 (quoting *In re EMC Corp.*, 677 F.3d at 1359). Accordingly, there should be little doubt that the pending misjoinder motion should be granted; Fred's should not have been sued together with scores of other, unrelated companies. Should the Court grant the relief requested in Fred's motion to dismiss for misjoinder, Fred's must be dropped as a party, as authorized by Fed. R. Civ. P. 21. In the alternative, however, the proper outcome is to sever the claims against Fred's into a separate action and transfer that action to the Western District of Tennessee.

## BACKGROUND

The accusations in this lawsuit, insofar as they are directed against Fred's websites, are in essence directed at conduct that occurred in the Western District of Tennessee. In support of its motion to dismiss for lack of jurisdiction (Dkt. No. 141), Fred's filed the Affidavit of Bradley McAdory, Esq. ("McAdory Aff.") (Dkt. No. 141-A). In support of its Reply Brief in Support of its Motion to Dismiss for Lack of Personal Jurisdiction (Dkt. No. 272), Fred's filed the Affidavit of James Deats ("Deats Aff.") (Dkt. No. 272-2). Mr. McAdory's Affidavit reflects the strength of the ties between Fred's and Tennessee, as well as the complete absence thereof between Fred's and Texas. As set forth in Mr. McAdory's Affidavit, Fred's has been incorporated in Tennessee since 1960. *See* McAdory Aff. ¶¶ 1, 5. Fred's maintains its principal place of business at 4300 New Getwell Road, Memphis, Tennessee 38118. *See* McAdory Aff. ¶ 1. Fred's owns and operates the www.fredsinc.com website. McAdory Aff. ¶ 6. The website is hosted by servers located in Memphis, Tennessee and owned by Fred's. Deats Aff. ¶ 1. Fred's does not own or lease any property in Texas, has no office in Texas, does not conduct business

in Texas, and has no registered agent for service of process in Texas. *Id.* ¶ 2. Fred's does not own or operate any servers in Texas and uses no servers provided by third parties. *Id.* In short, all knowledgeable employees are located in Tennessee and all relevant information is stored in Tennessee.

GeoTag is the owner by assignment of United States Patent No. 5,930,474 ("the '474 patent"). *See* Am. Compl. ¶ 59 (Dkt. No. 10). The only apparent nexus between GeoTag, this lawsuit, and the Eastern District of Texas is GeoTag's recent incorporation in Texas. *See* Am. Compl. ¶ 1; *see also* J. Crew's Motion to Sever and Transfer, Dkt. No. 372, pp. 2-3.

## ARGUMENT

Fred's moves this Court to transfer venue pursuant to 28 U.S.C. § 1404 to the Western District of Tennessee because the convenience of the parties, the convenience of the witnesses, and the interest of justice require such a transfer. Section 1404(a) provides: "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a); *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 (1981) (Section 1404(a) was enacted to allow "easy change of venue within a unified federal system"); *accord Veba–Chemie A.G. v. M/V Getafix*, 711 F.2d 1243, 1246 (5th Cir. 1983).

Motions to transfer patent actions, because they do not touch on issues of substantive patent law, are decided under the law of the regional circuit in which the district court sits. *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008) (mandamus granted directing transfer). Because Fred's merely seeks a transfer of venue under Section 1404(a) and not a dismissal under the doctrine of *forum non conveniens*, the burden for such a transfer is less. *See In re Volkswagen of Am. Inc.*, 545 F.3d 304, 314 (5th Cir. 2008) ("[T]he burden that a moving

party must meet to justify a venue transfer is less demanding than that a moving party must meet to warrant a *forum non conveniens* dismissal"); *accord Paltalk Holdings, Inc. v. Sony Computer,* 2010 WL 3517196, *3 (E.D. Tex. Sept. 3, 2010). "[T]he statute requires only that the transfer be '[f]or the convenience of the parties, in the interest of justice.'" *Volkswagen,* 545 F.3d at 314 (quoting *Veba–Chemie*, 711 F.2d at 1247).

### A. Venue Is Proper In Memphis, Shelby County, Tennessee

In addressing this issue, the Court should determine whether a civil action "might have been brought" in the destination venue. *Volkswagen,* 545 F.3d at 312. Fred's is headquartered within the Western District of Tennessee and is plainly subject to jurisdiction there. *See* 28 U.S.C. § 1391(a)(1) & (3). *Cf. Innoband, Inc. v. Aso Corp.,* 2011 WL 835934, *2 (E.D. Tex. Mar. 4, 2011) (venue is proper in district encompassing defendant's headquarters due to the "substantial corporate presence" there). That is true regardless of whether the Western District of Tennessee has personal jurisdiction over GeoTag. *Cf. In re Genentech*, 566 F.3d 1338, 1346 (Fed. Cir. 2009) (Section 1404(a) only requires "that the transferee court have jurisdiction over the defendant[ ] in the transferred complaint," not over the plaintiff) (brackets added).

GeoTag's connections to the Eastern District of Texas are relatively weak. Having acquired a Texas corporate presence just a few months ago, GeoTag's choice of forum should be afforded little weight. *See, e.g., Greiner v. American Motor Sales Corp.,* 645 F. Supp. 277, 279 (E.D. Tex. 1986) ("[W]here none of the operative facts occur within the forum of plaintiff's original selection, his choice is entitled to only minimal consideration.") (brackets added; citation omitted); *Pinpoint, Inc. v. Groupon, Inc.,* 2011 WL 6097738, *2 (N.D. Ill. Dec. 5, 2011) ("[Plaintiff's] choice of forum is entitled to little weight, though, because this district has a weak connection with the operative facts of its claims.") (brackets added).

4

B. **Convenience And The Interests Of Justice Heavily Favor Transfer**

In ruling on a motion to transfer under Section 1404(a), the Court considers the private and public interests first outlined in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947). *See Volkswagen*, 545 F.3d at 315. The private interest factors recited by the Fifth Circuit include: "(1) relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id*. The public interest factors consider: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws." *Id.*

All of the relevant private and public interest factors weigh in favor of finding that the Western District of Tennessee is a significantly more convenient venue for this suit and that transferring this case is in the interest of justice.

1. **Private Interest—Relative Ease of Access to Sources of Proof**

The first private interest factor weighs heavily in favor of transferring this case to the Western District of Tennessee—where virtually all if not all of the proof necessary to make or break this case is located. *See Volkswagen*, 545 F.3d at 316 ("[T]his Court has recently reiterated that the sources of proof requirement is a meaningful factor in the analysis."). Because of the nature of a patent infringement claim, the focus of the litigation is always on the alleged infringer's conduct. "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *Genentech*, 566 F.3d at 1345 (quotation

omitted); *In re Link_A_Media Devices Corp.*, 662 F.3d 1221, 1224 (Fed Cir. 2011); *accord Software Rights Archive, LLC v. Google, Inc.,* 2010 WL 2950351, *2 (E.D. Tex. July 22, 2010); *West Coast Trends, Inc. v. Ogio Intern'l, Inc.,* 2011 WL 5117850, *2 (E.D. Tex. Oct. 27, 2011) (noting that the place where the defendant's documents are kept weighs in favor of transfer to that location) (citation omitted).

As asserted in GeoTag's Complaint, this case concerns Fred's websites. In such an action, the *prima facie* sources of proof are the data, records (and, if applicable, source code) that relate to the accused instrumentality. As explained above, such evidence would be found at Fred's principal place of business in Memphis, Tennessee. Deats Aff. ¶ 1; McAdory Aff. ¶¶ 6-7. "In infringement litigation involving Internet websites courts have tended to emphasize the location where the website is maintained—otherwise the alleged tort would be too diffuse to pinpoint." *Pinpoint,* 2011 WL 6097738 at *2 (citation omitted). Put differently, "[k]eeping this case in the [Eastern District of Texas] will impose a significant burden on [Fred's] to transport documents that would not be incurred if the case were to proceed in the [Western District of Tennessee]." *Genentech*, 566 F.3d at 1346 (brackets added). For the same reason, GeoTag's claim arises out of actions which took place in the Western District of Tennessee, where Fred's headquarters are, and where Fred's employees perform the operations necessary to manage the websites at issue. *See, e.g., Mekiki Co., Ltd. v. Facebook, Inc.,* 2010 WL 2348740, *3 (D. Del. June 7, 2010) (plaintiff did not dispute that claims for infringement did not originate in Delaware, but at defendant's headquarters in Palo Alto where the website services allegedly using the patent at issue were developed); *Pinpoint,* 2011 WL 6097738 at *2 (situs of material events was District of Maine where plaintiff accused L. L. Bean of infringing conduct through operation of its website and promotional emails to customers); *Wireless Recognition Tech. LLC*

6

*v. A9.com, Inc.,* 2012 WL 506669, *4 (E.D. Tex. Feb. 15, 2012) (finding Northern District of California a "clearly more convenient" forum, *inter alia,* because a large number of witnesses and sources of proof were located at the headquarters of defendants there). Conversely, no claim arises out of actions which took place in Texas.

Accordingly, the location of the sources of proof factor weighs strongly in favor of transferring this case to the Western District of Tennessee. *See In re Horseshoe Entm't*, 337 F.3d 429, 434 (5th Cir. 2003) (reversing the district court's denial of a motion to transfer, and holding "[w]e think the Middle District Court erred in not giving significance to "the factor regarding the location of books and records' "); *Davis v. Signal Intern'l, LLC,* 2011 WL 2462296, *2 (E.D. Tex. June 17, 2011) (location of corporate records at headquarters in Mobile, Alabama, weighs in favor of transfer to a closer division); *see also In re Link_A_Media*, 662 F3d at 1224 (court must weigh these factors in transfer analysis).

### 2. Private Interest—Availability of Compulsory Process of the Witnesses

Fed. R. Civ. P. 45(b)(2)(B) provides that a district court has subpoena power over persons located outside the district if they are within 100 miles of the location of the proceeding. *Id.* All of the likely witnesses—presumably employees of Fred's—reside in and around Memphis, Tennessee and are subject to the subpoena power of the Western District of Tennessee, not the Eastern District of Texas. *See* McAdory Aff. ¶¶ 1-3. Fred's does not own or operate any servers in Texas and does not use any third party servers. Deats Aff. ¶ 1. Thus, Fred's knows of no person involved in the maintenance of its servers residing within this Court's subpoena power. Therefore, if anything, this factor tilts in favor of transfer.

### 3. Private Interest—Cost of Attendance for Willing Witnesses

It is likewise clear that the Western District of Tennessee is the most convenient forum for the witnesses because a significant number of Fred's likely witnesses reside within the subpoena power of the Court in Memphis. *See Wireless,* 2012 WL 506669 at *5 (significant number of party witnesses reside in proposed transferee forum, where defendants' corporate headquarters are). As such, it would be unduly costly—both in terms of expense and lost productivity—for Fred's to incur the cost of transportation for its witnesses to travel to Texas for hearings and trial. *See Volkswagen,* 545 F.3d at 317 (stating "it is an 'obvious conclusion' that it is more convenient for witnesses to testify at home") (citations omitted). This is important not only for purposes of attendance at trial, but also because the location of witnesses and evidence "necessarily implicate[s] the ease of conducting merits–related discovery in a location which is near the relevant witnesses and documents." *Enplanar, Inc. v. Marsh*, 11 F.3d 1284, 1291 (5th Cir. 1994).

Any corporate deposition of Fred's, or deposition of Tennessee-based witnesses, will necessitate travel to Tennessee. *See Salter v. Upjohn Co.,* 593 F.2d 649, 651 (5th Cir. 1979) (noting that it is "well settled" that the deposition of a corporation should "ordinarily be taken at its principal place of business," especially when the corporation is the defendant) (citation omitted). Should this action remain in the Eastern District of Texas, however, Fred's would face the more significant burden of litigating a case in Texas about its actions in Tennessee. If this case goes forward in Texas, Fred's and/or Tennessee-based witnesses will incur significant monetary costs for travel and lodging as well as personal sacrifices of being forced to travel out of town. *Volkswagen*, 545 F.3d at 317 ("Witnesses not only suffer monetary costs, but also the personal costs associated with being away from work, family, and community."); *Remmers v.*

*United States,* 2009 WL 3617597, *6 (E.D. Tex. Oct. 28, 2009) ("Additional distance means additional travel time; additional travel time increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time which these fact witnesses must be away from their regular employment").

Conversely, GeoTag should require relatively few witnesses to testify about what a Tennessee company and its Tennessee-based employees allegedly did in Tennessee to infringe the patent-in-suit. *See Software,* 2010 WL 2950351 at *2 ("In general, the ease of accessing the defendants' sources of proof weighs more heavily than the ease of plaintiff's proof, because the majority of relevant evidence in patent infringement suits usually comes from the accused infringers"). As the majority of the critical witnesses live and work in Tennessee, this factor too favors transfer.

Accordingly, (1) the cost of attendance for Fred's witnesses, (2) the burden and business interruption on Fred's to have key employees travel to and testify in Texas, and (3) the relative minimal burden on GeoTag weigh in favor of transfer.

### 4. All of the Relevant Public Interests Favor Transfer to Tennessee

The relevant public interest factors support a transfer under Section 1404(a). Because only federal, patent–related claims have been asserted in this action, there are no problems related to conflict of laws or judicial familiarity with the law. Federal, not Texas, law will govern in this case. *See Rembrandt Vision Technologies, LP v. Johnson & Johnson Vision Care, Inc.,* 2011 WL 2937365, *4 (E.D. Tex. July 19, 2011) ("…both the Middle District of Florida and the Eastern District of Texas are equally capable of applying patent law to infringement claims") (ellipses added).

Moreover, the more relevant public interest factor—having local interests decided locally—weighs in favor of transfer. The people of Tennessee have a strong interest in having this case decided locally. *See also Wireless,* 2012 WL 506669 at *6 (residents of proposed transferee forum "have a particularized interest in the subject matter of this lawsuit because the majority of the Defendants are headquartered there," the allegedly infringing products were developed there, and thousands of people are employed there); *accord Network,* 2012 WL 194382 at *7. Meanwhile, the Eastern District of Texas has at best the same generalized interest in a just result as any judicial district in the United States where Fred's website may be accessed. *See i2 Technologies, Inc. v. Oracle Corp.,* 2010 WL 3257645, *4 (E. D. Tex. Aug. 17, 2010) ("Generally, local interests that 'could apply virtually to any judicial district or division in the United States' are disregarded in favor of particularized local interests") (citation omitted). *See also Volkswagen,* 545 F.3d at 318 (in a products liability suit, disregarding local interest of citizens who used the widely–sold product within the transferor venue).

As in *Volkswagen*, the local interests in this case strongly favor transfer to the Western District of Tennessee. Because of the nature of a patent infringement case, the focus of this litigation, as well as the proof at trial, will be on Fred's and its actions performed in and directed from Tennessee. *See* 35 U.S.C. § 292(a). Thus, the local interests of the Western District of Tennessee, where Fred's is located, greatly outweigh any interests of having this case decided in Texas. *See AT&T Intellectual Prop. I, L.P. v. Airbiquity, Inc.*, 2009 WL 774350, *1 (N.D. Tex. Mar. 24, 2009) (holding the residents of Washington had local interest in outcome of case because defendant "was based [there], and most, if not all, of its witnesses, evidence and business operations are there"). Accordingly, the interests of the Western District of Tennessee favor transfer.

### C. GeoTag's Suggestion That The Cases Could Be "Deemed Severed" And Then Consolidated Is Untenable.

Although GeoTag concedes that the Defendants should be "deemed severed" under *In re EMC Corp.*, 677 F.3d 1351 (Fed. Cir. 2012), in its opposition to the defendants' motion to stay (Dkt. No. 355), it also argues that the cases then should be consolidated under Fed. R. Civ. P. 42. (Dkt. No. 368 at 2). That would effectively undermine the entire thrust of both *EMC* and *Volkswagen* by requiring unrelated parties to litigate in a jurisdiction in which venue is improper based on the plaintiff's decision to file suit in that forum. Indeed, the portion of *EMC* quoted by GeoTag makes clear that the propriety of venue continues to be a limitation on the district court's discretion to join parties in a single lawsuit. *See In re EMC Corp.*, 677 F.3d at 1360 ("the district court has considerable discretion to consolidate cases for discovery and for trial under Rule 42 *where venue is proper* and there is only a common question of law or fact") (quoted in Dkt. No. 368 at 2) (emphasis added and quotation omitted). The Court should either drop Fred's as a misjoined party or, alternatively, sever and transfer the case against Fred's the Western District of Tennessee.

### CONCLUSION

Based on the foregoing, should the Court deny Fred's motion to dismiss, Fred's respectfully requests that the court grant its motion to sever and transfer to the Western District of Tennessee.

11

Dated: June 22, 2012

Respectfully submitted,

/s/ Bradley E. Chambers
Bradley E. Chambers
Texas State Bar No. 24001860
1301 McKinney
Suite 3700
Houston, TX 77010
Telephone:  (713) 650-9700
Facsimile:  (713) 650-9701
bchambers@bakerdonelson.com

Bradley E. Trammell (Of Counsel)
Tennessee State Bar No. 013980
Baker, Donelson, Bearman, Caldwell & Berkowitz
165 Madison Avenue, Suite 2000
Memphis, Tennessee  38103
Telephone:  (901) 577-2121
Facsimile:  (901) 577-0781
btrammell@bakerdonelson.com

**Attorneys for Defendant Fred's, Inc.**

## CERTIFICATE OF CONFERENCE

In compliance with Local Rule CV-7(h), counsel for Defendant, Fred's, Inc., attempted to confer with Hai Ni, counsel for Plaintiff, and the attempt has been unsuccessful.  On June 22, 2012 the undersigned made a telephone call with no response.  As of the filing of this motion, the undersigned has not received any response.  It is assumed this motion is opposed.

/s/ Bradley Chambers
Bradley Chambers

**CERTIFICATE OF SERVICE**

I certify that on June 22, 2012, the foregoing document was filed electronically in compliance with Local Rule CV–5(a). As such, this document was served on all counsel who have consented to electronic service.  Local Rule CV–5(a)(3)(A).


                                                /s/ Bradley Chambers
                                              Bradley Chambers